## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**    :

    **v.**    :    **1:24-CR-203**

**SHAKWON SHARIF JAMISON,**    :    **(JUDGE MANNION)**

    **Defendant**    :

### MEMORANDUM

Presently before the court is Defendant, Shakwon Sharif Jamison, motion to dismiss Count 13 of the Indictment, charging him with a violation of 18 U.S.C. §922(g)(1) (felon in possession of a firearm). (Doc. 60). Defendant was on federal supervised release and state parole at the time of the alleged offense, and he argues that Section 922(g)(1) contravenes his Second Amendment right to bear arms. For the reasons that follow, his motion will be **DENIED**.

### I.    BACKGROUND

On July 21, 2024, a federal grand jury sitting in Harrisburg, Pennsylvania returned a 13-count indictment against Mr. Jamison and a co-defendant. (Doc. 1). Among other things, the Indictment charged Mr. Jamison with a violation of 18 U.S.C. §922(g)(1), as a felon in possession

of a firearm, specifically a Taurus 9mm handgun, serial number TKN78099, on or about November 21, 2023, in Dauphin County, Pennsylvania. (*Id.*, at 11). At the time he possessed the firearm, Mr. Jamison allegedly knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, (*Id.*), and was on federal supervised release and state parole at the time of the alleged conduct.[1] Mr. Jamison's criminal history consists of the following convictions:

- Passing counterfeit United States currency, in violation of 18 U.S.C. §472, for which he was sentenced on February 9, 2021, to 18 months incarceration followed by 2 years of supervised release. *United States v. Jamison*, No. 1:19-CR-00018 (M.D. Pa.). Jamison was on supervised release at the time he committed the instant offenses.

- Firearms not to be carried without a license, in violation of 18 Pa. C.S.A. §6105, and possession with intent to distribute a controlled substance, 35 P.S. §780-113(a)(30), for which he was sentenced on November 19, 2014, to 18 to 36 imprisonment. *See Commonwealth v. Jamison*, No. CP-22-CR-368-2014 (Dauphin Cty.).

- Arson, 18 Pa. C.S.A. §3301(a)(1)(ii), burglary, 18 Pa. C.S.A. §3502(a)(2), and terroristic threats, 18 Pa. C.S.A. §2706(a)(1), for which he was sentenced on February 10, 2020, to 3.5 to 7 years

---

[1] The Government alleges, and Defense counsel concedes, that Defendant was on federal supervised release and state parole on November 21, 2023. (Doc. 61, at 1 n.1; Doc. 64, at 4).

imprisonment. See *Commonwealth v. Jamison*, No. CP-22-CR-991-2018 (Dauphin Cty.).

- Possession with intent to distribute a controlled substance, 35 P.S. §780-113(a)(30), for which he was sentenced on February 10, 2020, to 3 to 6 years imprisonment. *Commonwealth v. Jamison*, No. CP-22-CR-6525-2018 (Dauphin Cty.).

- Aggravated assault, 18 Pa. C.S.A. §2702(a)(3), possession with intent to distribute a controlled substance, 35 P.S. §780-113(a)(30), for which he was sentenced on February 10, 2020, to 3 to 6 years imprisonment. *Commonwealth v. Jamison*, No. CP-22-CR-608-2019 (Dauphin Cty.).

(Doc. 64, at 2-3).

Mr. Jamison, through counsel, filed a motion to dismiss the Count 13 of the Indictment on July 2, 2025. (Doc. 60). Both parties have filed their respective briefs, (Docs. 61 and 64), and the motion is now ripe for disposition.

## II.    DISCUSSION

### A. <u>Second Amendment Framework</u>

The Second Amendment mandates that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment "confer[s] an individual right to keep and bear arms" for

traditionally lawful purposes, such as self-defense within the home. 554 U.S. 570, 595, 629 (2008). But the Court clarified that "the right was not unlimited, just as the First Amendment's right of free speech was not." *Id.* (citing *United States v. Williams*, 553 U.S. 285 (2008)). To that end, the Supreme Court cautioned that "nothing in [its] opinion should be taken to cast doubt" on laws like §922(g)(1) that prohibit "the possession of firearms by felons." *Id.* at 626-627 & n. 26; *see also*, *United States v. Quailes*, 126 F.4th 215, 219 (3d Cir. 2025).

The Supreme Court "made the constitutional standard endorsed in *Heller* more explicit" in *New York Rifle & Pistol Ass'n, Inc. v. Bruen* by announcing a new two-step analytic framework for analyzing Second Amendment challenges to firearm regulations. 597 U.S. 1, 31 (2022). At the first step, courts must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 17. If so, the Second Amendment "presumptively protects that conduct," and courts then proceed to *Bruen's* second step, where "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* If the government satisfies its burden, the firearm regulation passes constitutional muster.

In *United States v. Rahimi*, the Supreme Court clarified that "the appropriate analysis" under *Bruen*'s second step "involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. 680, 692 (2024). Under *Rahimi*'s principles-focused approach to analogical reasoning, courts are to evaluate challenged regulations at a higher level of generality than whether "those regulations [are] identical to ones that could be found in 1791." *Id.* Rather than seeking out a perfect statutory analogue, "historical twin," or "dead ringer," *id.* (quoting *Bruen*, 597 U.S. at 30), courts are to draw on "relevantly similar" historical regulations to derive "principles underlying the Second Amendment" and then ask if the modern-day regulation "comport[s] with th[ose] principles" in terms of "why and how it burdens the Second Amendment right." *Id.* at 692, 698.

The Third Circuit applied this framework in *Range v. Attorney General (Range II)*, 124 F.4th 218, 232 (3d Cir. 2024),[2] where it held that the petitioner, who had completed his sentence for making a false statement to obtain food stamps and brought an as-applied challenged in the form of a

---

[2] The antecedent case is *Range v. Attorney General (Range I)*, 69 F.4th 96 (3d Cir. 2023), *judgment vacated sub nom. Garland v. Range*, -- U.S. -- --, 144 S. Ct. 2706 (2024).

declaratory judgment action, was entitled to "protection from prosecution under §922(g)(1) for any future possession of a firearm." 124 F.4th at 232. On the other hand, in *United States v. Moore*, the Third Circuit rejected an as-applied challenge by a convict who had not completed his sentence and nonetheless possessed a gun while on federal supervised release. 111 F.4th 266, 273 (3d Cir. 2024). The court recounted how felons at this country's founding were disarmed while completing their sentences, *id.* at 270-71, whether their sentence was served inside or outside of prison, *id.* at 272 (citing a Virginia law imposing sentence of "forced labor on a ship" and a North Carolina law sentencing non-violent convicts to service at direction of the local sheriff), and concluded that "[a] convict completing his sentence on supervised release does not have a Second Amendment right to possess a firearm." *Id.* at 273.

In both opinions, the Third Circuit recognized that some Founding-era forfeiture laws disarmed a felon for a wide range of crimes but still allowed him to "[re]acquire arms after completing his sentence and reintegrating into society." *Range II*, 124 F.4th at 231; *see Moore*, 111 F.4th at 269-71 (observing that certain forfeiture laws required convicts to forfeit their weapons through at least the end of their sentences). These Founding-era laws, as the Third Circuit explained in *Moore*, "yield[ed] the principle that a

convict may be disarmed while he completes his sentence," and this principle justified applying §922(g)(1) to a convict on supervised release. 111 F.4th at 272. The court likened the "historical practice of disarming a convict during his sentence" to "disarming a convict on supervised release" because supervised release is also part of a criminal sentence. *Id.* at 271. In *Quailes*, the Third Circuit extended this reasoning to state parole and probation, even if not proceeded by imprisonment. 126 F.4th at 220. The court explained that "[f]ederal supervised release, like parole and probation, represents a phase of the criminal sentence where the convict is on supervised release and must observe special restrictions on their liberty." *Id.* at 222; *see also id.* n. 9 ("Due to the similarity between parole, probation, and supervised release, courts often treat parolees, probationers, and supervisees as indistinguishable for constitutional purposes.") (citations omitted). Accordingly, the Third Circuit joined other circuits in "holding that §922(g)(1) is constitutional as applied to convicts on parole or probation." *Id.* at 224 (citing *United States v. Goins*, 118 F.4th 794, 801-02 (6th Cir. 2024) (holding that "our nation's historical tradition of forfeiture laws … supports disarming those on parole, probation, or supervised release"); *United States v. Gay*, 98 F.4th 843, 847 (7th Cir. 2024) (concluding that "parolees lack the same armament rights as free persons" because

"[p]arole is a form of custody" that simply allows a convict to "serve some of his sentence [ ] outside prison walls"). Thus, together, *Quailes, Moore* and *Range II* teach that our Nation's historical tradition of firearm regulation supports disarming a convict who has not "complete[d] his sentence and reintegrate[d] into society," which includes individuals serving a term of federal supervised release following incarceration, as well as those on parole or probation, even if not proceeded by imprisonment. *Quailes*, 126 F.4th at 224; *Moore*, 111 F.4th at 272; and *Range II*, 124 F.4th at 232. In the instant matter, Defendant was on both federal supervised release and state parole at the time of the alleged offense.

With the framework now in place, the Court will proceed to apply it to the case at hand.

### B. Section 922(g)(1) is Constitutional as Applied to Defendant

Under the first step of the *Bruen* framework, the Court determines that Mr. Jamison, as an adult citizen, belongs to the class of "the people" whom the Second Amendment presumptively protects. 597 U.S. at 31; *see also Moore*, 111 F.4th at 269; *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 127 (3d Cir. 2024). The offense in question penalizes conduct squarely within the Second Amendment's scope: possessing a handgun. *Id.*; *see also Heller*, 554 U.S. at 628. Accordingly, the burden shifts to the

Government to demonstrate its regulation aligns with this Nation's historical tradition of firearm regulation. *Id.* at 17. The Court concludes that the Government has satisfied this burden.

Mr. Jamison was on federal supervised release and state parole at the time of the alleged criminal conduct in Count 13 of the Indictment. Either status independently satisfies the constitutional requirements for application under §922(g)(1) as applied to him. As affirmed by the Third Circuit, a "convict completing his sentence on supervised release does not have a Second Amendment right to possess a firearm. So[,] 18 U.S.C. §922(g)(1) is constitutional as applied to" Mr. Jamison. *Moore*, 111 F.4th at 273. Separately, "[p]arole, like federal supervised release, 'is an established variation on imprisonment of convicted criminals' where a prisoner is 'release[d] from prison, before the completion of [their] sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.'" *Quailes*, 126 F.4th at 222-23 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)). Accordingly, §922(g)(1) is constitutional as applied to convicts on parole such as Mr. Jamison. *Id.* at 224.

In its brief, the Government shouldered its burden of proving the application of §922(g)(1) to Mr. Jamison's alleged conduct is consistent with the nation's historical tradition of firearm regulation by not only providing

this Court with the applicable case law directly on point, but also historically relevant text, history and traditions reflecting Founding-era felony punishment and disarmament laws. (*See* Doc. 64, at 12-19). The Government goes further to argue that this country's historical tradition of firearm regulation reaches certain types of individuals who have been convicted of serious crimes, present a danger to others and a special danger of firearm misuse. (*Id.*, at 12-34). Though this argument may carry weight in its own right, the Court need not reach it.

In opposition, the defense argues that even if Mr. Jamison were convicted of several offenses, the Founding-era principle—that a felon could legally reacquire arms after completing his sentence and reintegrating into society—"applies nonetheless equally to Mr. Jamison." (Doc. 61 at 6 (quoting *Range II*, 124 F.4th at 249)). But that argument puts the cart before the horse: Mr. Jamison has not yet completed his sentence or reintegrated into society, and the Third Circuit has made clear that a person still serving a sentence via supervised release or state parole has not done so. *Moore*, 111 F.4th at 272 ("the early American forfeiture laws—which required forfeiting property in general and arms in particular—likewise yield the principle that a convict may be disarmed while he completes his sentence and reintegrates into society. And this principle justifies applying §922(g)(1)

to [the defendant], a convict on supervised release."); *Quailes* 126 F.4th at 220 ("*Moore* and *Range II* teach that our Nation's historical tradition of firearm regulation supports disarming a convict who has not 'complete[d] his sentence and reintegrate[d] into society,' including, as we addressed in *Moore*, convicts who are serving a term of federal supervised release after release from incarceration) (citations omitted). Accordingly, this Court finds that §922(g)(1) is constitutional as applied to Mr. Jamison who was on both supervised release and state parole.

## III.    CONCLUSION

For the foregoing reasons, the Court will deny the motion to dismiss Count 13 of the Indictment. (Doc. 60). An appropriate order follows.

**Malachy E. Mannion**
**United States District Judge**

**Dated:** 8/20/25
24-203-01